# United States District Court

### For the

## Western District of New York



| | | |
|---|---|---|
| ZAKKIYYA CARTER, as Pro Se | ) | COMPLAINT |
| | ) | 42 U.S.C. 1983 |
| Plaintiff | ) | Docket No. _____ |
| | )_ | 25 CV 1339 |
| | ) | |
| -V- | ) | |
| | ) | |

CITY OF BUFFALO,
CITY OF BUFFALO POLICE OFFICER
MARK CYREK, CITY OF BUFFALO
POLICE STANLEY HONDRA, CITY OF
BUFFALO POLICE MICHEAL REDMOND,
and CITY OF BUFFALO POLICE MAJED OTTMAN

**ALL IN THEIR OFFICIAL AND UNOFFICIAL CAPACITIES**

### PLAINTIFF'S PARTY INFORMATION

1.    Plaintiff ZAKKIYYA CARTER has a c/o address at 280 Stevens Avenue, Buffalo, New

York 14215, located in Erie County and the State of New York.

### DEFENDANTS PARTIES INFORMATION

2.    Upon information and belief, the CITY OF BUFFALO is a municipal corporation duly

organized and existing under and pursuant to the laws of the State of New York. The City of

Buffalo has a principal place of business at 65 Court Street, Buffalo New York 14202.

3.    City of Buffalo E-District Police Officer MARK CYREK is employed by the City of

Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

4.    City of Buffalo E-District Police Officer STANLEY HONDRA is employed by the City

of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

5.    City of Buffalo E-District Police Officer MICHEAL REDMOND is employed by the

City of Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

6.    City of Buffalo E-District Police Officer MAJED OTTMAN is employed by the City of

Buffalo and was acting in such capacity during the events which give rise to this lawsuit.

## COMPLAINT AND DEMAND FOR JURY TRIAL

7.    Plaintiff ZAKKIYYA CARTER brings this action against the CITY OF BUFFALO and the

individually named officers (collectively, "Defendants") and demands a trial by jury on all issues

so triable.

## APPLICATION OF LIBERAL CONSTRUCTION

8.    Plaintiff ZAKKIYYA CARTER appears here in her pro se status. As such, this Plaintiff

respectfully requests that her pleadings herein will be liberally construed by this honorable

Court, pursuant to the standards established by the Supreme Court of the United States in

Haines v. Kerner, 404 U.S. 519 (1972) (Holding that: " a pro se litigant's pleadings,

"however in artfully pleaded," are held to the most liberal of standards because pro se

litigants may be less capable of formulating legally-competent initial pleadings.)

## JURISDICTIONAL STATEMENT

9.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331,

because Plaintiff's claims arise under the Constitution and laws of the United States, including

42 U.S.C. §§ 1983 and 1988. Plaintiff seeks redress for violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

10.    The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), which provides for jurisdiction over civil actions to redress the deprivation of rights secured by the Constitution by persons acting under color of state law.

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Erie County, New York, within the Western District of New York.

## PRELIMINARY STATEMENTS

12.    This civil action is brought pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff ZAKKIYYA CARTER's constitutional rights under the Fourth and Fourteenth Amendments. Plaintiff seeks relief for her unlawful seizure and prosecution arising from a August 2022 traffic stop during which Defendants initiated and continued criminal charges against her without probable cause, relying on fabricated or materially false evidence.

13.    Plaintiff further alleges that the defendants CITY OF BUFFALO is liable under *Monell* for maintaining policies, customs, or practices that caused or contributed to the constitutional violations described herein. As a direct result of Defendants' actions, Plaintiff was wrongfully detained, subjected to criminal prosecution, forced to appear in court, and suffered and continues to suffer emotional, reputational, and financial harm.

14.    Plaintiff seeks compensatory and punitive damages, as well as such other relief as this Court deems just and proper.

## FACTUAL BACKGROUND

15.    On August 27, 2022, Plaintiff was lawfully operating her vehicle on Fillmore Avenue in Buffalo, New York, traveling toward Kensington Avenue with the intention of returning to the residence at 345 Kensington Avenue.

16.    While en route to 345 Kensington Avenue, Plaintiff noticed an acquaintance standing outside the Golden Nugget establishment at 2046 Fillmore Avenue, briefly greeted him, and then immediately resumed driving. At all times, Plaintiff was operating her vehicle lawfully, committed no traffic violations, caused no obstruction, and received no commands or warnings from any police officer.

17.    As Plaintiff continued driving toward 345 Kensington Avenue, she noticed a marked E-District patrol vehicle parked across from the Golden Nugget.

18.    Discovery later confirmed that the officer in that patrol vehicle was Defendant Officer CYREK, who, in a separate internal report, claimed he was assigned to detail duty at the Golden Nugget. Upon information and belief, officers assigned to bar detail duty are expected to remain at the location to monitor patrons and maintain safety until the establishment closes, which typically occurs in the early morning hours.

19.    Despite his asserted detail-duty assignment at the Golden Nugget, Defendant CYREK decided to leave his stationary post to follow a single vehicle, Plaintiff's vehicle, which was inconsistent with the customary responsibilities of bar detail duty.

20.    As Plaintiff signaled a left turn approximately 100 feet in advance, she then turned into the gas station lot adjacent to 345 Kensington Avenue for the purpose of safely parking near the residence.

21.      Defendant CYREK followed Plaintiff into the lot, drove past her vehicle, and then positioned his patrol car in a head-on manner intersecting Plaintiff's path, thereby initiating a traffic stop.

22.      Plaintiff had committed no traffic infractions, was driving normally, and displayed no signs of impairment, further undermining the credibility of Defendant CYREK's stated justification for the stop. Plaintiff was not a patron of the Golden Nugget, had not exited the establishment, and was merely passing by when she briefly greeted an acquaintance outside, leaving no basis for Defendant CYREK to suspect bar-related intoxication or impairment. At no time before or during the encounter did Plaintiff engage in any conduct that could give rise to reasonable suspicion or probable cause. The absence of any lawful basis for the stop is especially striking given Defendant CYREK's asserted bar-detail duty assignment, which provided no legitimate reason for him to abandon his post to pursue a single vehicle that was lawfully operating and merely turning into a nearby lot.

23.      Defendant CYREK first alleged that Plaintiff had committed unspecified traffic violations and then escalated his accusations to claim she was driving while intoxicated, despite the absence of erratic driving, swerving, speeding, or any objective indicators of impairment.

24.      Shortly thereafter, defendant officers and additional E-District officers arrived on scene, reinforcing Defendant CYREK.

25.      Defendant officer CYREK escalated the encounter into a full DWI investigation despite the absence of any articulable traffic violation or objective indicia of impairment, and without reasonable suspicion or probable cause to believe Plaintiff had committed any offense.

26.      Upon concluding the purported DWI investigation, Defendant CYREK, with the assistance of the other defendant officers and other responding officers, charged Plaintiff with

multiple violations of the New York Vehicle and Traffic Law. Plaintiff was accused of the following: (i) Vehicle and Traffic Law § 1194(2)(f) — refusing a chemical test; (ii) Vehicle and Traffic Law § 1192(3) — Driving While Intoxicated ("DWI"), first offense; (iii) Vehicle and Traffic Law § 1194(1)(b) — refusal to take a breath test; (iv) Vehicle and Traffic Law § 1225 — alleged "avoiding an intersection" at a traffic light; and (v) Vehicle and Traffic Law § 1227(1) — alcohol/cannabis in a motor vehicle.

27.     This escalation resulted in Plaintiff's arrest and transport to Central Booking, where she remained in custody until her arraignment and subsequent release. Plaintiff's vehicle was also seized, taken into the custody of the impound, and later unlawfully transferred to the lienholder without proper notice or legal authority during her active criminal proceedings.

28.     With respect to Vehicle and Traffic Law § 1194(2)(f) (chemical test refusal), neither the defendant arresting officer, CYREK, nor any defendant assisting officers, and nor assisting officers read Plaintiff the statutory refusal warnings in clear and unequivocal language before accusing her of refusing a chemical test. Plaintiff was never advised of the legal consequences of refusal as required by § 1194(2)(f).

29.     Nevertheless, defendant officer MARK CYREK testified under oath at plaintiff's DMV chemical refusal hearing on February 2, 2023, that he read the statutory refusal warnings to her directly, that false testimony resulted in a one-year mandatory license suspension and permanent entries on plaintiff's driving abstract, including a2302040000 and a2302040000r (hearing ids h2302030000 and h2302030000r).

30.     In light of the foregoing, the charge under VTL § 1194(1)(b) (refusal to take a breath test) was likewise improper. Plaintiff offered to submit to a breath test during the DWI investigation and never refused consent at any time. Indeed, Defendant Officer MARK CYREK

acknowledged in his accusatory statement that Plaintiff was willing to take the test, yet he nonetheless charged her with refusal.

31.     Regarding the alleged traffic violation under Vehicle and Traffic Law § 1225 ("avoiding an intersection" at a light), Plaintiff had properly signaled her left turn approximately 100 feet prior to her turn and was lawfully entering the gas station lot adjacent to 345 Kensington Avenue, her intended destination.

32.     Plaintiff never exited the gas station ramp into the intersection or never had any intentions on exiting the gas station in the manner described by Defendant CYREK, nor did she "run" or intentionally bypass red phased traffic light. Defendant CYREK deliberately mischaracterized Plaintiff's lawful left turn into an "avoidance" of the traffic signal in order to justify the stop and subsequent charges

33.     As to the Vehicle and Traffic Law § 1227(1) charge ("alcohol/cannabis in a motor vehicle"), Defendant Officer CYREK, with the assistance and participation of the other Officer Defendants and/or assisting officers on scene, did not observe or recover any open container of alcohol in plain view inside Plaintiff's vehicle. No container containing alcohol was found. The only item identified in connection with this charge was an allegedly empty cup, which contained no liquid, was never tested, and was not established as containing any alcoholic substance.

34.     Under New York VTL § 1227(1), an "open container" offense requires the presence of an alcoholic beverage in a bottle, can, cup, or other receptacle. An empty cup or empty container cannot constitute an "open container" under the statute. Despite having no evidence that Plaintiff possessed any alcohol in her vehicle, and despite relying solely on an empty cup that contained no alcoholic beverage whatsoever, Defendants nevertheless charged Plaintiff with this offense, rendering the charge facially insufficient and legally improper from its inception.

35.     With respect to the DWI charge under VTL § 1192(3), Defendant CYREK directed Plaintiff to perform roadside field-sobriety exercises (walk-and-turn-type, finger-to-finger coordination type, and alphabet recitation). Plaintiff attempted the exercises on a non-level surface, advised Defendant CYREK of ongoing mold-related health and balance issues, and completed the exercises as instructed, including completing the finger-to-finger coordination test after the pace was slowed and reciting the alphabet clearly.

36.     As a result of the unlawful stop and the fabricated/unsupported allegations described above, Plaintiff was arrested and subjected to criminal prosecution that lacked probable cause.

37.     Following her arrest, Plaintiff was required to appear in criminal court on multiple occasions in connection with the above charges and remained under the control of the criminal process for approximately two (2) years and several months.

38.     During the pendency of the case, Plaintiff was subjected to court-ordered conditions and requirements, including mandatory programs and evaluations, despite the absence of any lawful basis for the underlying charges.

39.     Plaintiff was also required to participate in a D.R.U.G Courts program and related compliance conditions as part of the prosecution, causing additional financial, logistical, and emotional burdens.

40.     Plaintiff was pressured and induced through her initial assigned counsel, Dominique Tauffer to undergo a competency evaluation under CPL Article 730, without being fully informed of the scope and potential consequences of the evaluation.

41.     Plaintiff objected to the 730 processes to her assigned counsel, once she became aware of its full implications and communicated that she did not consent to proceed. Nevertheless, the evaluation went forward.

42.    The resulting 730 report mischaracterized Plaintiff's presentation and grievances as evidence of incompetence, despite the absence of any prior, lawful, clinically diagnosed mental defect or objective basis suggesting that Plaintiff lacked the ability to understand the proceedings or assist in her defense. Plaintiff sought to challenge the report, but no meaningful challenge was pursued, and the matter was instead transferred to new counsel.

43.    A subsequent competency review conducted thereafter found Plaintiff competent to proceed, confirming that the earlier incompetency narrative was unsupported.

44.    Despite the substantial emotional, financial, and personal burdens imposed by repeated court appearances and prolonged prosecution, the criminal proceedings ultimately terminated in Plaintiff's favor on December 17, 2024, when the charges were dismissed for lack of probable cause under *People v. Ingle*, 36 N.Y.2d 413 (1975)

45.    Plaintiff further alleges that the August 27, 2022, stop did not occur in isolation, but against the backdrop of escalating police attention beginning in late July 2022, shortly after Plaintiff exercised her tenant rights and reported hazardous housing conditions to multiple oversight agencies.

46.    Beginning in late July 2022, Plaintiff made several police reports to the Buffalo Police Department's E-District, including reports concerning burglary, property intrusion, computer-related crimes, and other criminal conduct connected to her landlord and a third-party property management company. At that time, the property management company had no legal authority over the premises, a fact later confirmed through documentation.

47.    Despite Plaintiff making detailed reports, no investigation was initiated, no follow-up was conducted, and no detective or supervisor contacted Plaintiff regarding any of her

complaints. Instead, Plaintiff was repeatedly dismissed, minimized, or told no action would be taken, including when she sought assistance in obtaining an Order of Protection.

48.    Following these reports and Plaintiff's stated intent to pursue legal remedies against her landlord and the property management company, Plaintiff observed an escalation in police encounters involving E-District officers during the month of August 2022.

49.    The escalation included four separate police encounters within a period of approximately one month, as follows:

• **August 3, 2022** – Plaintiff contacted police to report a personal incident; the encounter resulted in constitutional violations and subsequent harassment by Child Protective Services (CPS), after officers at the scene instigated CPS involvement.

• **August 16 or 17, 2022** – Plaintiff was followed for approximately ten minutes by an E-District officer and then stopped without reasonable suspicion or probable cause.

• **August 27, 2022** – the traffic stop and fabricated DWI charges giving rise to this action.

• **August 29, 2022** – Plaintiff was again confronted by E-District officers, including some of the same defendant officers involved days earlier, who assisted in an unlawful detention and transport and threatened Plaintiff with arrest if she did not comply, resulting in another constitutional violation.

50.    Upon reviewing several of plaintiff's police reports, plaintiff learned that defendant officer CYREK was listed as a supervisor or supporting officer on at least one of the prior police reports plaintiff had filed, connecting him directly to matters for which no investigation was conducted.

51.       The repeated encounters, the failure to investigate Plaintiff's prior complaints, and the involvement of the same E-District personnel, including Defendant CYREK, form a consistent pattern of escalation, harassment, and retaliatory policing leading up to the August 27, 2022, stop.

52.       Plaintiff alleges that these events were interrelated and reflected a broader pattern of retaliatory conduct by individuals acting under color of law, particularly after Plaintiff reported housing-related criminal conduct, exercised her tenant rights protected under the Fair Housing Act and New York Real Property Law, and expressed an intent to pursue legal action.

53.       Plaintiff contends that this sequence of events was akin to a coordinated pattern of conduct involving multiple municipal and contracted agencies, including law-enforcement, emergency-response, and child-protection entities, whose actions consistently escalated situations, disregarded Plaintiff's reports of criminal victimization, and contributed to a course of retaliatory and chilling treatment. Although Plaintiff does not assert a civil RICO claim in this action, she alleges that the interconnected conduct of these entities functioned in a manner comparable to an organized and mutually reinforcing pattern, akin to Racketeer Influenced and Corrupt Organizations under 1962(c) ultimately resulting in the unconstitutional stop and prosecution on August 27, 2022.

## FIRST CAUSE OF ACTION

### FOR VIOLATION OF THE FOURTH AMENDMENT as per 42 U.S.C. §1983 FOR THE MALICIOUS PROSECUTION AGAINST DEFENDANTS CITY OF BUFFALO OFFICERS MARK CYREK, STANLEY HONDRA, MICHEAL REDMOND and MAJED OTTMAN

54.       Plaintiff restates and incorporates each and every foregoing allegation of this complaint as though fully set forth herein.

55.     To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." See: *Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)*.

56.     Plaintiff can demonstrate that all requisite elements of malicious prosecution are satisfied with respect to the criminal proceeding initiated against her under the New York Vehicle and Traffic Law and related offenses.

57.     On August 27, 2022, Defendant Officer CYREK arrested Plaintiff and initiated the above criminal charges against her, with the assistance and participation of the other Officer Defendants and/or assisting officers present at the scene. These charges included, VTL § 1192(3) – Driving While Intoxicated (first offense), VTL § 1194(1)(b), VTL § 1225 – Avoiding an Intersection or Traffic Signal, and VTL § 1227(1) – Possession of Alcohol or Cannabis in a Motor Vehicle on a Highway.

58.     Plaintiff suffered a continuing deprivation of liberty as a result of this prosecution, including arrest, detention, multiple court appearances, and other post-arraignment restraints consistent with a Fourth Amendment seizure pursuant to legal process. *Murphy*, 118 F.3d at 945–

59.     The criminal proceedings terminated in Plaintiff's favor on December 17, 2024, when all charges were dismissed. Under *Thompson v. Clark*, a favorable termination for § 1983 malicious prosecution is established where the prosecution ends without a conviction. 596 U.S. 36, 42–43 (2022)

60.     As detailed above, Defendants lacked probable cause to commence or continue the proceedings against Plaintiff. Because the lack of probable cause has been sufficiently pled and was determined in Plaintiff's favor, malice may be inferred. See *Cruz v. City of New York*, No. 08

Civ. 8640 (LAP), 2010 WL 3020602, at *6 (S.D.N.Y. July 27, 2010); *Bleiwas v. City of New York*, No. 15-CV-10046 (ER), 2017 WL 3524679, at *6 (S.D.N.Y. Aug. 15, 2017)

61.     Further, under the doctrine of collateral estoppel, Defendants are barred from relitigating probable cause in this action where that issue has already been resolved by a court of competent jurisdiction. See *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500–01 (1984); *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999); *Buechel v. Bain*, 97 N.Y.2d 295, 303–04 (2001).

62.     Defendants' initiation and continuation of the baseless charges caused Plaintiff to be unreasonably seized and prosecuted in violation of the Fourth Amendment. Even if Defendants attempt to claim arguable probable cause for any charge, Plaintiff's malicious prosecution claim remains viable as to the charges that lacked probable cause. *Chiaverini v. City of Napoleon*, 602 U.S. ___ (2024).

63.     The Defendant Officer's actions deprived Plaintiff of her due process rights and her right to be free from unreasonable restraint upon her liberty under the Fourth and Fourteenth Amendments.

64.     Plaintiff received favorable terminations on the criminal charges lodged against her based on the lack of merit to said charges.

65.     These burdens, including arrest, detention, repeated court appearances, compelled programs and evaluations, reputational harm, emotional distress, and out-of-pocket losses, and loss of earning capacity, were the foreseeable and proximate consequences of Defendants' initiation and continuation of criminal proceedings without probable cause.

## SECOND CAUSE OF ACTION

### FOR VIOLATION OF THE FOURTEENTH AMENDMENT DUE-PROCESS VIOLATION as per 42 U.S.C. §1983 FOR THE FABRICATION OF EVIDENCE AGAINST DEFENDANTS CITY OF BUFFALO OFFICERS MARK CYREK, STANLEY HONDRA, MICHEAL REDMOND and MAJED OTTMAN

66.     Plaintiff restates and incorporates each and every foregoing allegation of this complaint as though fully set forth herein.

67.     To plead a "fabricated evidence" claim under § 1983, a plaintiff must allege that an investigating official (1) fabricated evidence that was (2) likely to influence a jury's verdict, (3) forwarded the evidence to prosecutors, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result. The plaintiff must also show that the fabrication was the cause-in-fact and proximate cause of their injury and that the criminal prosecution ended in their favor. See *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997).

68.     Notwithstanding that the charges for allegedly avoiding an intersection and driving while intoxicated were unsupported and lacked probable cause, Defendant CYREK, acting in concert with the other Officer Defendants and/or assisting officers, nevertheless accused Plaintiff of additional false offenses, including a fabricated breath-test refusal, a fabricated chemical-test refusal, and a false "plain-view" open-container charge.

69.     Defendant Officer CYREK knowingly authored and swore to an accusatory instrument and associated reports asserting (i) that Plaintiff refused a breath test, (ii) that she refused a chemical test after receiving statutory warnings in clear and unequivocal language, and (iii) that an "open clear plastic cup containing an alcoholic beverage" was in plain view in the center console, statements contradicted by body-worn-camera footage, timestamped chronology, and Plaintiff's firsthand knowledge and observations.

70.    Defendants HONDRA, REDMOND, and OTTMAN, were present at the scene and assisted in the stop, investigation, arrest, and/or vehicle search, thereby facilitating the initiation and continuation of the criminal case adopted and repeated these statements in police paperwork and transmitted them to prosecutors, thereby initiating and maintaining the criminal case.

71.    Such fabrications were material and were 'likely to influence a jury's verdict,' and in fact did influence an administrative hearing outcome. Fabricated 'refusal' evidence, false open-container assertions, and misstatements or omissions bearing on intoxication are the type of evidence that directly affects determinations of guilt, credibility, and probable cause. See *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274–75 (2d Cir. 2016) (fabricated inculpatory statements are inherently material); *Morse v. Fusto*, 804 F.3d 538, 547–49 (2d Cir. 2015) (due-process violation where officials deliberately alter, misstate, or create evidence used against a defendant); *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000) (fabrication combined with downstream prosecutorial use establishes causation in §1983 claims)."

72.    Prosecutors relied on these statements to pursue charges, and the fabrications were both the but-for and proximate causes of Plaintiff's deprivations: custodial arrest and booking, over a two-year prosecution with approximate ~30 court appearances, seizure/impoundment and ultimate loss of her vehicle, and the DMV one-year license and CDL-permit suspension and fees predicated on the concocted "refusal."

73.    These injuries constitute deprivations of liberty and property without due process. The criminal case terminated in Plaintiff's favor when the court dismissed for lack of probable cause, satisfying the favorable-termination element under *People v. Ingle*, 36 N.Y.2d 413 (1975).

Accordingly, Plaintiff states a viable §1983 fabrication-of-evidence claim against the above-named officers, with the City's liability pleaded separately under Monell.

## THIRD CAUSE OF ACTION

**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (MALICIOUS PROSECUTION & FABRICATION OF EVIDENCE, ARISING FROM PRETEXTUAL AND UNLAWFUL SEARCHES AND SEIZURES, IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS) per MONELL V. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658 (1978) against CITY OF BUFFALO**

74.    Plaintiff restates and incorporates each and every foregoing allegation of this complaint as though fully set forth herein.

75.    A municipality may be held liable under 42 U.S.C. § 1983 when a plaintiff establishes: (1) the existence of a municipal policy or custom, (2) that such policy or custom caused a constitutional deprivation, and (3) that the policy or custom was the moving force behind the plaintiff's injury. See *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Such a policy or custom may arise from formal municipal legislation, widespread and longstanding practices, the decisions of policymakers, or a failure to train or supervise officers that reflects deliberate indifference. See *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

76.    Defendant CITY OF BUFFALO is liable under Monell for the unlawful stop, detention, and seizure of Plaintiff and her vehicle, which occurred without reasonable suspicion

or probable cause, and which served as the foundation for the later fabrication of evidence and
the initiation of criminal charges against Plaintiff without legal justification.

77.    Upon information and belief, unlawful traffic stops, *inter alia*, by Buffalo Police
officers, without individualized suspicion, occur as a routine matter, particularly during traffic
stops, even in the absence of any indication that a person poses a threat. Such practice constitutes
a de facto policy or custom of the Buffalo Police Department and the City of Buffalo.

78.    Under New York law, a search is constitutionally permissible only where an officer
can articulate a reasonable suspicion that the individual is armed and presents a danger. See
*People v. Solivan*, 156 A.D.3d 1434 (4th Dep't 2017). No such suspicion was present in
Plaintiff's case, yet an unlawful traffic stop was conducted.

79.    Plaintiff's experience aligns with a broader pattern within the Buffalo Police
Department of initiating traffic stops and vehicle seizures without lawful justification. Officers
routinely escalate minor or nonexistent traffic encounters into full investigative detentions
without articulable reasonable suspicion or probable cause. This practice reflects a department-
wide custom of using traffic enforcement as a pretext for unconstitutional searches and seizures,
unsupported by established legal standards.

80.    The practice of unlawful traffic stops and warrantless vehicle seizures without
reasonable suspicion or probable cause has been reported repeatedly and constitutes a persistent
custom that municipal policymakers have either knowingly tolerated or failed to correct,
demonstrating deliberate indifference.

81.    Plaintiff contends that this was not an isolated incident but part of a pattern of
harassment by Defendant officers and/or their associates from the same precinct. Prior to the
events at issue, Plaintiff had filed multiple criminal complaints and formal requests for

investigation concerning retaliation, threats, computer crimes, inter alia, and intimidation by private actors, reports the Buffalo Police Department ignored. Plaintiff even requested an order of protection against the prospective suspects, for which she provided supporting proof.

82.    Following these whistleblower efforts and Plaintiff's expressed intent to pursue legal action against her former landlord and the property management company for violations of her protected tenant rights under the Fair Housing Act, New York Real Property Law, and the First Amendment right to petition the government for redress of grievances, officers of the Buffalo Police Department, particularly those assigned to E-District, began to target Plaintiff. In August 2022 alone, Plaintiff was involved in four separate encounters with Buffalo Police Department, E-District unit officers on August 3, August 16 or 17, August 27 (subject of this action), and August 29, of 2022. Each encounter lacked any objectively lawful basis and involved constitutional violations, including unlawful stops, unwarranted intrusions, and coercive tactics. The close temporal proximity between Plaintiff's protected complaints and the sudden escalation in negative police encounters supports an inference of retaliatory motive.

83.    These repeated, close-in-time incidents strongly indicate a retaliatory and discriminatory pattern by the Buffalo Police Department, particularly within E-District, rather than isolated or rogue conduct. The targeted nature of these encounters, the absence of legitimate bases for intervention, and the progression from ignored victim complaints to fabricated criminal accusations align with unconstitutional retaliation for protected activity. This pattern is consistent with conduct condemned in *Rupp v. City of Buffalo* (2024), where retaliatory enforcement by BPD officers against a civil-rights attorney for speech and advocacy was held sufficient to proceed under § 1983.

84.     This pattern mirrors the allegations in *Black Love Resists in the Rust v. City of Buffalo*, 20-cv-6528 (W.D.N.Y.), where plaintiffs challenge the Buffalo Police Department's racially biased and pretextual enforcement practices, including stops lacking probable cause, as systemic violations of the Fourth and Fourteenth Amendments.

85.     New York courts have consistently held that police must have a lawful basis to initiate a vehicle stop. *People v. Guthrie*, 25 N.Y.3d 130 (2015), reaffirms that stops made under misinterpretations of law or vague justifications are unconstitutional. *People v. Spencer*, 84 N.Y.2d 749 (1995), further establishes that investigative stops without specific legal cause violate Fourth Amendment standards.

86.     The City's failure to supervise and discipline officers for unconstitutional stop practices and/or seizures has resulted in a persistent and widespread custom of enforcement actions lacking legal foundation, which City policymakers have either knowingly tolerated or failed to address.

87.     As recognized in *Santos v. City of New York*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012), circumstantial evidence of a pattern of unlawful conduct by officers, together with municipal inaction, is sufficient to establish the existence of a policy or custom for purposes of Monell liability.

88.     The unlawful stop and detention of Plaintiff on August 27, 2022, directly enabled the subsequent fabrication of evidence and the malicious prosecution of Plaintiff. Municipal actors distorted, misrepresented, and omitted exculpatory information, including body-worn camera footage, in order to justify charges that lacked probable cause. These actions were consistent with a municipal custom of tolerating or encouraging the creation and use of false or misleading evidence.

89.     The malicious prosecution of Plaintiff resulted from the same municipal policy, custom, and practice that gave rise to the unlawful stop: retaliatory targeting of individuals engaged in protected activity, pretextual enforcement actions, fabrication or distortion of evidence, and initiation of baseless criminal charges without probable cause.

90.     The targeted stop and resulting search and seizure of Plaintiff were not the product of a single officer's rogue behavior but reflected an institutional culture within the Buffalo Police Department of disregard for constitutional protections and limits on police power, including tolerance of retaliatory and pretextual enforcement. The City's failure to supervise, train, and discipline officers who engage in such practices amounts to deliberate indifference to the risk that this misconduct would recur and injure individuals like Plaintiff.

91.     Based on the foregoing, Defendant CITY OF BUFFALO is liable under 42 U.S.C. § 1983 for malicious prosecution, fabrication of evidence, and the underlying unlawful stop and detention from which those constitutional violations flowed, all in violation of the Fourth and Fourteenth Amendments. These constitutional injuries were caused by a municipal policy, custom, or practice of retaliation, pretextual enforcement, and deliberate indifference to constitutional rights, within the meaning of Monell and its progeny. This conduct, reflecting deliberate indifference to constitutional safeguards, gives rise to liability under the standards set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Franks v. City of New York*, 2015 U.S. Dist. LEXIS 72563 (E.D.N.Y. 2015); and *Smith v. City of New York*, 290 F. Supp. 2d 317, 321 (E.D.N.Y. 2003).

**WHEREFORE**, Plaintiff ZAKKIYYA CARTER respectfully demands judgment against all Defendants, jointly and severally, and against any officers, employees, agents, or individuals

acting in concert with them under color of law, and requests that the Court award the following relief:

(a) Compensatory damages in an amount to be determined by a jury, for the physical, emotional, reputational, financial, and liberty harms suffered as a result of the unconstitutional stop, arrest, prosecution, fabricated evidence, and related retaliation;

(b) Punitive damages against the individual Defendants for their willful, malicious, reckless, and/or oppressive conduct in violation of clearly established constitutional rights;

(c) Declaratory relief, declaring that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983;

(d) Injunctive relief, as necessary and appropriate, to prevent future violations of Plaintiff's constitutional rights, including but not limited to expungement of any records generated as a result of the unlawful stop, arrest, and prosecution;

(e) Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

(f) Pre-judgment and post-judgment interest as permitted by law; and

(g) Such other and further relief as this Court deems just and proper.

**Certification and Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _December 10th, 2025_

_Zannyee_

Signature of Plaintiff

Zakkiyya Carter
_____
Printed Name of Plaintiff